UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-81164-CIV-Rosenberg/Reinhart

ALPINE CAPITAL, LLC,

                Plaintiff,

vs.

SATORI WATERS, LLC, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING
## RECEIVER'S FEE APPLICATION (DE 87)

**THIS CAUSE** is before this Court upon an Order referring the motions related to the Receiver's fee application to the undersigned for appropriate disposition.  DE 105.

Currently before the Court is an application for fees by Anderson Bauman Tourtellot Vos & Co. ("ABTV"), the former receiver for Defendants' personal property.  DE 87.  Also before the Court are Plaintiff's objections to ABTV's motion (DE 99), and ABTV's reply.  DE 106.

## BACKGROUND

This dispute stems from the insolvency of Defendants' detoxification facility and the stipulated Court appointment of ABTV as the Receiver of "all of Defendants' personal property."  DE 16 at ¶ 2.[1]  Specifically, the Receiver was ordered to

direct and control the orderly wind-down of Defendants' businesses, including the marketing and sale of Defendants' detoxification facility, accounts receivable and other Collateral until the indebtedness owed to Plaintiff is satisfied in full.

*Id.*

_____

[1] Plaintiff is Defendants' "senior secured lender" and it brought this action for commercial foreclosure and receivership in that capacity.  DE 99 at ¶ 1.

The order appointing ABTV (dated October 20, 2017) stated that Edward J. Sanz, a partner at ABTV, would be "principally responsible" for managing the Receiver's responsibilities and that Mr. Sanz would be

> authorized to immediately enter upon, receive, take and have possession of the Collateral. Until further order of this Court or until Defendants' Indebtedness to Plaintiff under the Credit Agreement . . . is paid in full, the Receiver shall have complete and exclusive control, possession and custody of the Collateral and shall direct Defendants' financial activities.

*Id.* at ¶ 4.

ABTV was also empowered with "operating, controlling, marketing for sale, and safeguarding the Collateral," the power to "appoint, retain and/or terminate such agents and/or employees as the Receiver considers necessary," execute contracts for the benefit of the Collateral, collect rents, profits and revenues from the Collateral, and pay all reasonable expenses associated with managing and maintaining the Collateral. *Id.* at ¶ 7.

The Court ordered that ABTV be compensated at the hourly rate of $350.00 for all non-travel work, and $200 per hour for travel time. *Id.* at ¶ 13. ABTV's compensation was capped at $40,000.00 per month. *Id.* ABTV was also to be reimbursed for its reasonable travel expenses and costs related to operating the receivership. *Id.* On November 20, 2017, the Court approved ABTV's request to employ the law firm of Tripp Scott, P.A. ("Tripp Scott") at an hourly rate of $350.00. DE 29.

On December 9, 2017, ABTV entered into an Asset Purchase Agreement (APA) with a potential buyer of Defendant's assets, SW Holdings, LLC (f/k/a Eastern Enterprises, LLC). DE 35-1. At some point thereafter, Defendants' active business operations ceased and SW Holdings terminated the APA on February 3, 2018. DE 68. On February 14, 2018, Plaintiff filed a motion seeking the appointment of a substitute receiver, stating that "[d]ue to the change in

circumstances, Plaintiff and the Current Receiver believe it is in the best interest of all the parties to substitute a replacement receiver . . ." DE 74 at ¶ 5.  On February 21, 2018, the Court granted the motion and appointed Rick Arrowsmith of Alvarez & Marsal Healthcare Industry Group LLC, as the substitute receiver based on his "prior experience with the Collateral and extensive experience in liquidating health care facilities and equipment . . ." DE 74 at ¶ 6; DE 80, 81.

On February 28, 2018, the ABTV filed its Final Fee Application, seeking recovery of its fees from January 8, 2018 through February 28, 2018.  DE 87-1 at 3.  According to the Application, ABTV's work included: identifying and establishing control over the assets, determining the "collectability and value of accounts receivable," managing multiple ongoing and new lawsuits, marketing Defendants' assets, negotiating an asset purchase agreement, managing the "fallout of the subsequent termination of the asset purchase agreement, including the immediate cessation of Defendants' operations and termination of all employees," and initiating the "final liquidation process." DE 87 at 3-4.

The Application also seeks payment of Tripp Scott's fees for the period from November 14, 2017 through February 28, 2018.  According to ABTV,

> [t]he handling of the case presented significant time constraints, as the Asset Purchase Agreement being negotiated in November and December, 2017 had a very tight time frame in order to get appropriate approvals and so the attorneys handling the APA were routinely acting as if everything was an emergency. Moreover, due to the quick turnaround times requested by the Court for briefing Objections to the Sale, the case involved time constraints imposed by the circumstances. The receivership presented several novel issues including which assets were technically collateral of the Defendants subject to the Receivership Order, which required skill by the lawyer.

DE 87 at 6.

The Application seeks reimbursement of the following fees and costs:

| | |
|---|---|
| Receiver ABTV's Fees | $ 67,093.75 |
| Saunders Accounting Fees | 17,871.25[2] |
| Travel and expenses | 8,689.70 |
| Tripp Scott's Fees & Costs | <u>113,401.28[3]</u> |
| **TOTAL** | **$207,055.98** |

## DISCUSSION

### 1.   ABTV's Application for Fees

ABTV is entitled to its reasonable fees for services performed in accordance with the parameters set forth in the District Court's order appointing ABTV as the receiver.   In calculating a reasonable receiver's fee award, the Court uses the same lodestar method used in awarding attorney's fees.  *See F.T.C. v. SlimAmerica*, No. 97-06072-CIV, 2008 WL 5435892, at *2 (S.D. Fla. Dec. 31, 2008) (J. Graham).  Thus, the Court must consider the number of hours reasonably expended, together with the customary fee charged in this community for similar legal services.  *See Hensley v. Eckerhart*, 461 U.S. 424 (1983).  The Court has discretion to adjust the lodestar amount "in order to reach a more appropriate attorneys' fee."  *F.T.C. v. SlimAmerica,* 2008 WL 5435892, at *2 (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  In submitting a request for fees, applicants are required to exercise "billing judgment." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quoting *Hensley*, 461 U.S. at

---

[2]   Saunders Accounting provided accounting and bookkeeping services to the Receiver.  DE 87 at 5.

[3]   According to the Affidavit of John M. Mullin, Esq., Tripp Scott billed $126,248.00 in connection with the receivership, but it has already been paid $14,056.50, leaving a balance of $112,191.50.  In addition, Tripp Scott expended $1,209.78 in publication costs for the Notice of Sale.  *See* Mullin Aff. (DE 87-2) at ¶¶ 3, 6, 7.

434). If fee applicants do not exercise billing judgment by excluding "excessive, redundant, or otherwise unnecessary" hours, the court must exercise billing judgment for them. *See Barnes*, 168 F.3d at 428 (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1999)).

       To the extent the District Court has already approved the hourly rates sought by ABTV and Tripp Scott, this Court will limit its review to the time sheets provided to determine whether the time spent on discrete tasks was reasonable.[4]  As an initial matter, the Court rejects Plaintiff's contention that "[w]hen considering the additional fees [ABTV] is seeking for its counsel, the total sought exceeds the $40,000 a month cap provided by the Court." DE 99 at 1-2.  This argument is belied by the order appointing ABTV, which imposed the monthly limitation on ABTV's compensation only, and did not include its expenses or the fees due to the professionals ABTV retained.  Based on the billing records submitted by ABTV, this Court finds that ABTV did not exceed its monthly compensation cap of $40,000.00.

       Plaintiff also objects to ABTV's application for fees, alleging a generalized "lack of attentiveness to the Defendants' business [and] lack of control over the Collateral."  DE 99 at ¶ 3.  Plaintiff contends that Mr. Sanz was "largely absent from day-to-day operations" during his tenure as receiver (*id.* at ¶ 4), however, this claim is refuted by Mr. Sanz's Affidavit and his billing records, which document his frequent travel from Charlotte, North Carolina to Defendants' office where he routinely held on-site meetings.  DE 106-1.  To the extent Mr. Sanz was prevented from being physically present on-site due to a family emergency and a previous professional obligation (which he disclosed to the Court), he remained actively involved in the receivership via remote means and ensured that Richard Cooper of Saunders Accounting Firm

---

[4] Tripp Scott's invoices are attached to the initial fee application (DE 87) and ABTV's invoices are attached to its reply papers.  DE 106.

was present.  *Id.* at ¶¶ 5, 6, 8.  Although Plaintiff objects that ABTV "delegated day-to-day

operations to Richard Cooper" (*id.* at ¶ 5), the order appointing ABTV specifically conferred

upon it the right to "retain . . . such agents and/or employees as the Receiver considers necessary

. . ." DE 16 at ¶ 7.  Mr. Sanz's affidavit explains the importance of Mr. Cooper's involvement.

> The use of Mr. Cooper was done with the full knowledge, and initial support, of
> [Plaintiff]. Because of Mr. Cooper's specialized knowledge of the drug treatment
> and rehabilitation business, I was able to discharge five former full-time
> employees of Defendants' Finance Department, including the CFO . . . Utilizing
> Mr. Cooper was hardly a dereliction of Receiver's duties, instead it was a
> practical and sound business decision of the Receiver consistent with his stated
> authority to employ those agents and individuals who, in the discretion of
> Receiver, were necessary to enable the Receiver to perform his duties.

*See* Sanz Aff. (DE 106-1) at ¶ 9.

Finally, "Plaintiff objects to the Court awarding <u>any</u> fees to ABTV" because "ABTV's

ineffective execution of its duties likely caused the estate to lose valuable collateral and assets."

DE 99 at 6-7 (emphasis added).  Plaintiff claims that "Mr. Sanz's absentee approach resulted in

someone without notice and without authority changing the locks on Defendants' detoxification

facility" which caused a "loss of collateral."   DE 99 at ¶ 6.   On the contrary, as Mr. Sanz

explains, "[t]he biggest obstacle to this receivership . . . was the routine practice of Plaintiff . . .

to 'sweep' the Receiver's bank accounts routinely" (DE 106 at ¶ 15), thus, "Defendants were

hopelessly in default in virtually every contract and lease agreement . . . [because] ABTV was

not being funded to pay these expenses.  As a result, Receiver was powerless to stop landlords

from exercising state court remedies" (DE 106 at 4), including entry without notice and changing

the locks.   DE 106-1 at ¶ 11.   According to the Sanz Affidavit, "I contacted landlord

representatives and confirmed that Collateral was not being removed from the premises . . ." *Id.*

In any event, the law is clear that "[e]ven though a receiver may not have increased, or prevented

a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his

duties, he is entitled to compensation." *S.E.C. v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992). Here, the Court declines to impose Plaintiff's draconian proposal of denying the receiver's fees. Rather, the Court is convinced by Mr. Sanz's Affidavit that ABTV diligently discharged its duties during the receivership. Moreover, the Court has reviewed the billing records submitted and finds the time spent by the receiver and Mr. Cooper to be reasonable.

### 2. Tripp Scott's Application for Fees

According to John Mullin's Affidavit, Tripp Scott assigned four directors, four associates, and two paralegals to represent ABTV during its tenure as receiver. *See* Mullin Aff. (DE 87-2) at ¶ 4(a)-(j).

> There is, of course, nothing inherently unreasonable about a client having multiple attorneys. And it is certainly not unusual in a major lawsuit . . . for law firms to assign a team of attorneys, ranging from senior partners to junior associates, to the case. But when multiple attorneys are involved in representing one client in litigation, there is always the risk of inherent inefficiencies.

*Procaps S.A. v. Patheon Inc*., No. 12-24356-CIV, 2013 WL 6238647, at *16 (S.D. Fla. Dec. 3, 2013) (J. Goodman) (court found that law firm had "overstaffed" the matter when it assigned eight timekeepers and sought recovery of fees for all).

Here, the Court finds Tripp Scott's level of staffing to be excessive. A review of Mullin's Affidavit and Tripp Scott's billing records reveals that two directors (John Mullin and Ian Lis) performed the bulk of the work on this matter. They billed 194 and 82.5 hours, respectively, whereas the other two directors had minimal involvement in the case and billed a total of 8.6 hours. Given the disparity in their hours, the Court recommends limiting Tripp Scott's recovery to the time spent by Attorneys Mullin and Lis. Similarly, two associates (Marianna Seiler and Rachel Baush) billed 36.9 hours and 39.8 hours, respectively, while the other two associates together billed 2.5 hours, which should also be deducted. Finally, Advanced

Certified Paralegal Christie A. Becker billed 27.5 hours on the case, while another paralegal billed less than one hour, which should be deducted.  *See ACE Ltd. v. CIGNA Corp.,* 2001 WL 1286247, *5 (S.D.N.Y. Oct. 22, 2001) (where case was "overstaffed" by "numerous attorneys and paraprofessionals," court took such factors into consideration and reduced the fee requested accordingly) (citing *General Elec. Co. v. Compagnie Euralair, S.A.,*1997 WL 397627, *4-5 (S.D.N.Y. July 3, 1997)).

Given that the District Court already approved the reduced rates charged by Tripp Scott, this Court will only consider whether the time spent by the two directors, two associates and one paralegal specified above was reasonable.  Mullin's Affidavit categorizes the work performed by the firm as follows:

a.  Negotiation and preparation of a complicated and lengthy Asset Purchase Agreement ("APA"), including preparation of all necessary schedules and exhibits to the APA and numerous discussions and consultations with prospective buyer's counsel regarding regulatory approval, licensing, etc.;

b.  Preparing detailed Motions and Memoranda of Law seeking approval of the draft APA and the bidding and sale procedures, etc.;

c.  Preparing a separate Motion to Approve the Sale of Assets Free and Clear of Liens, including responding to various Objections to Sale;

d.  Responding to a myriad of creditor inquiries, objections, and questions relating to treatment of their potential claims and debts;

e.  Coordinating the sending of formal Notice of the Sale to hundreds of creditors and interested parties, and coordinating the publication of formal Notice in the Daily Business Review;

f.  Negotiation of various settlements with landlords to prolong the tenancy of the Defendants following lease defaults, including negotiation of formal settlement agreements to avoid summary eviction;

g.  Negotiating partial releases and cooperation among other secured creditors who asserted liens on various assets that were to be included within the assets sold at closing;

h. Assisting the Receiver with shifting focus to a wind down process and liquidation after the APA was terminated by Buyer;

i. Efforts to safeguard and protect the Collateral, amid conflicting claims of ownership;

j. Coordinating defense of lawsuits filed against the Defendants with counsel for the entities, while facilitating payment for same in the budget process;

k. Assisting ABTV in the transition to a substitute receiver, including communications with counsel for the new Receiver.

DE 87-2 at ¶ 8.

The Court has reviewed the billing entries submitted by the five approved timekeepers and finds that the time they spent assisting ABTV in managing the numerous, complicated and time-sensitive aspects of this foreclosure was reasonable. Accordingly, Tripp Scott is entitled to recover a total of $122,399.00 in fees, minus the $14,056.50 already paid, plus $1,209.78 in publication costs, for an outstanding amount due of $109,552.28.

## REPORT AND RECOMMENATION

Accordingly, this Court **RECOMMENDS** that the District Court **GRANT** the Application for Fees as follows:

| | |
|---|---|
| Receiver ABTV's Fees | $ 67,093.75 |
| Saunders Accounting | 17,871.25 |
| Travel and expenses | 8,689.70 |
| Tripp Scott P.A.'s Fees & Costs | 109,552.28 |
| **TOTAL** | **$203,206.98** |

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation

with the Honorable Robin L. Rosenberg, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers this 19th day of June, 2018 at West Palm Beach in the Southern District of Florida.

_____
BRUCE REINHART
United States Magistrate Judge

cc:     Counsel of Record