UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ALPINE CAPITAL, LLC,
a North Carolina limited liability company,

      Plaintiff,

v.                                  CASE NO.: 9:17-cv-81164-RLR

SATORI WATERS, LLC, a Florida limited liability company; LUXE WELLNESS, LLC, a Florida limited liability company; KENSHO WELLNESS GROUP, LLC, a Florida limited liability company; TREATMENT RESOURCES OF MARGATE, LLC, a Florida limited liability company; SW LABS LLC, a Florida limited liability company; ALMOST THERE LLC., a Florida limited liability company; LABSURE LLC, a Florida limited liability company; QUANTITATIVE LAB SOLUTIONS, LLC, a Florida limited liability company; ZENDO PROPERTIES, LLC, a Florida limited liability company; SATORI WATERS III, LLC, a Florida limited liability company; SATORI WATERS IV, LLC, a Florida limited liability company; RR INVESTCO LLC, a Florida limited liability company; and RR MEDCO LLC, a Florida limited liability company, and IN THE ROOMS, INC., a Florida corporation,

      Defendants,

RONALD TANNEBAUM, and KENNETH POMERANCE,

      Nominal Defendants.

---

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

    Pursuant to Fed. R. Civ. P. 56, Plaintiff, Alpine Capital, LLC ("Alpine") hereby files this Motion for Summary Judgment and Memorandum of Law in Support, and states as follows:

## Introduction

Alpine extended financing to Borrowers[1] and obtained a blanket lien on substantially all of their assets. There is no dispute that Borrowers defaulted on their obligations and that Alpine is entitled to a judgment of foreclosure and for Borrowers' outstanding indebtedness. In fact, Borrowers have not denied any of the allegations in Alpine's complaint, but have admitted they "are insolvent and are subject to numerous and substantial claims from both secured and unsecured creditors." [Doc. 76, ¶ 2]. Summary judgment should be granted on Alpine's claims against the Borrowers.

Summary judgment is also proper against In the Rooms, Inc. ("ITR") and, as nominal defendants, its principals, Ronald Tannebaum ("Tannebaum") and Kenneth Pomerance ("Pomerance"). At the time Alpine extended financing to Borrowers, it relied on Borrower Satori Waters, LLC's ("Satori") ownership of ITR's assets. There is no *genuine* dispute that Satori owned ITR's assets when Alpine took a blanket lien on all of Satori's assets. ITR executed a purchase agreement whereby it sold its assets to Satori. Since that time and up to the point of this litigation, ITR has acted in complete accordance with that asset sale to Satori. ITR received a $500,000 promissory note and a $50,000 payment from Satori under the purchase agreement. Tannebaum and Pomerance immediately went to work for Satori and Satori paid them each over $375,000 in about two years. Satori also paid other ITR expenses, and to date, ITR has not returned a dime. Further, ITR executed a subordination agreement whereby it subordinated its payment rights against Satori to Alpine's. The evidence is conclusive that ITR conveyed its assets to Satori thereby making those assets a part of Alpine's collateral.

---

[1] The "Borrower" means the following defendants, collectively: Satori Waters, LLC; RR Medco, LLC; Labsure, LLC; RR Investco, LLC; Almost There, LLC; SW Labs, LLC; Satori Waters III, LLC; Zendo Properties, LLC; Treatment Resources of Margate, LLC; Satori Waters IV, LLC; Luxe Wellness, LLC; Kensho Wellness Group, LLC; and Quantitative Lab Solutions, LLC.

**Statement of Material Facts**

Pursuant to Local Rule 56.1(a), Alpine files its Statement of Material Facts simultaneously with this motion. All defined terms in the Statement of Material Facts carry their same meanings here.

**Argument**

Summary judgment must be granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Here, there is no dispute that Borrowers defaulted on their obligations and that Alpine is entitled to foreclosure and damages. There is also no dispute that Alpine's collateral includes those assets that ITR sold to Satori.

(a)  *Alpine is entitled to foreclosure of its Collateral.*

The Credit Agreement is governed by North Carolina law. [Doc. 7 at Ex. A, § 12.1]. "North Carolina law has long recognized a creditor's right to proceed with non-judicial foreclosure by power of sale or foreclosure by action (judicial foreclosure)." *United States Bank Nat'l Assoc. v. Pinkney*, 369 N.C. 723, 726 (2017). Judicial foreclosure "is an ordinary civil action" that requires proof of a secured debt, a default, and plaintiff's right to enforce the security instrument or deed of trust. *Id.* at 723, 726.

All elements of judicial foreclosure are indisputably met here. The Credit Agreement grants Alpine a security interest in virtually all of Borrowers' assets. [Doc. 7 at Ex. A, § 4.1]. Alpine duly perfected its security interest in the Collateral. [Doc. 7, ¶ 8 & Composite Ex. B]. Borrowers defaulted under the Credit Agreement by, without limitation, failing to meet required weekly collections covenants; defaulting on their facilities leases; failing to timely execute a letter of intent to sale their assets; failing to provide Alpine with insurance information; and failing to pay the

accelerated balance due under the Credit Agreement. [Doc. 7, ¶¶ 43-45 & Ex. O]; *4th Regdos Dec.* ¶ 15. Despite written notice of their defaults, Borrowers failed to cure their defaults and continue to be in default. *Id.* Under these circumstances, the Credit Agreement expressly allows Alpine "realization upon Collateral by judicial foreclosure." [Doc. 7 at Ex. A, § 10.5(c)]. As such, Alpine is entitled to summary judgment for foreclosure of the Collateral.[2]

  (b) *Alpine is entitled to damages, fees, and costs against the Borrowers.*

North Carolina analyzes actions to recover a debt as breach of contract claims. *See Davis v. Chase Home Fin., LLC*, 227 N.C. App. 648, 650 (2013); *Suntrust Bank v. Bryant/Sutphin Prop., LLC*, 222 N.C. App. 821, 822 (2012). "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of the contract." *Davis*, 227 N.C. App. at 650.

  1. The Credit Agreement, as amended, is a valid contract between Alpine and Borrowers. [Doc. 7 at ¶¶ 7, 9, 11, 12 & Exs. A, C, E, F]. Borrowers breached the Credit Agreement by, without limitation, failing to pay the accelerated balance due thereunder; failing to meet required weekly collections covenants; defaulting on their facilities leases; failing to timely execute a letter of intent to sale their assets; failing to provide Alpine with insurance information; and failing to pay the accelerated balance due under the Credit Agreement. [Doc. 7, ¶¶ 43-45 & Ex. O]; *4th Regdos Dec.* ¶ 15. As of July 16, 2018, the balance owed to Alpine under the Credit Agreement is $4,313,859.25, itemized as follows:

| | |
|---|---|
| Principal: | $4,246,403.26 |
| Accrued Interest: | $25,257.83 |
| Tax Guard Fees: | $208.08 |

---

[2] Alpine does not seek foreclosure of the equity interests in the Borrowers.

8615116-1

| | |
|---|---|
| Pro Rated Acct. Monitoring Fee: | $516.16 |
| Accrued Wire Fees: | $105.00 |
| Accrued Legal Fees & Costs: | $41,368.92 |

*4th Regdos Dec.* ¶ 16. The amount owed to Alpine under the Credit Agreement continues to bear interest. *Id.* at ¶ 17. Alpine is entitled to summary judgment for these amounts.

      (c)    <u>*Alpine's Collateral includes ITR's assets*</u>.

There is no genuine dispute that Alpine's Collateral includes ITR's assets because the Purchase Agreement conveyed those assets to Satori before Satori pledged virtually all of its assets to Alpine. But even if that were not the case, ITR has conducted itself at all times in accordance with the terms of the Purchase Agreement. By doing so, ITR ratified the Purchase Agreement, waived its right to challenge its validity, and is estopped from attacking the enforceability of the Purchase Agreement.

      (i)    <u>The Purchase Agreement conveyed ITR's assets to Satori.</u>

Alpine is entitled to a declaration that ITR sold its assets to Satori on August 18, 2015 when it executed the Purchase Agreement, and that those assets are subject to Alpine's unquestioned first lien position. The Purchase Agreement is governed by Florida law. [Doc. 24, § 8.10]. Under Florida law, any person with an interest in a contract may obtain a declaration of rights under that contract. FLA. STAT. § 86.021.

On the face of the Purchase Agreement, ITR sold, assigned, transferred, conveyed, and delivered to Satori all of ITR's described assets, including its intellectual property. [Doc. 107-1, § 2.01]. In exchange, ITR received a $500,000 promissory note from Satori. *Id.* at § 2.03; *4th Regdos Dec.*, ¶ 7 & Ex. A. By its terms, the Purchase Agreement was effective as of August 18, 2015. [Doc. 107-1, § 2.07]. Tannebaum and Pomerance executed the Purchase Agreement on behalf of

ITR and warranted that they had "full power and authority to enter into [the Purchase Agreement]." *Id.* at § 3.01. ITR expressly represented that the Purchase Agreement "constitutes a legal, valid and binding obligation of [ITR] enforceable against [ITR] in accordance with its terms." *Id.*

Moreover, Satori was a bona fide purchaser of ITR's assets. Over fifty years ago, Florida's Supreme Court explained that it is well established that rescission "cannot be claimed against a third-party bona fide grantee without notice." *Holley v. May*, 75 So. 2d 696, 697 (Fla. 1954). In turn, "[a] 'bona fide purchaser' is someone who buys something for value without notice of another's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title." *Etkin & Co., Inc. v. SBD, LLC*, No. 11-21321-CIV, 2015 WL 11714357 at *8 (S.D. Fla. Sept. 1, 2015) (internal quotation omitted). While ITR has argued in this case that the Purchase Agreement was not duly authorized, ITR admits that it did not advise Satori of any potential issues with the asset purchase until months *after* the execution of the Purchase Agreement. [Doc. 59-1, ¶¶ 3-4]. Because Satori was a bona fide purchaser for value, the Purchase Agreement cannot be rescinded. *See Holley*, 75 So. 2d at 697.

As ITR conceded, the Purchase Agreement is valid, binding, and enforceable, and because Satori was a bona fide purchaser, ITR cannot rescind it. Based on the agreement's unambiguous language, Satori became the owner of ITR's assets on August 18, 2015. Alpine is entitled to summary judgment declaring that Satori owns ITR's assets and as a result is in a valid and binding first lien position as to those assets.

>   (ii) <u>Alternatively, ITR ratified the Purchase Agreement, waived its right to contest it, and is estopped from attacking the enforceability of the Purchase Agreement.</u>

Even if the Purchase Agreement was not initially an enforceable conveyance of ITR's assets to Satori, ITR ratified it, waived its rights to contest it, and is estopped from attacking it.

Ratification occurs when a principal adopts or affirms the acts of its agent, "either expressly, as by written act, or impliedly, as by acceptance of the benefits of the contract." *Spurrier v. United Bank*, 359 So.2d 908, 910 (Fla. 1st DCA 1978). Similarly, waiver "is the intentional relinquishment of a known right," which may be "implied from conduct." *Fireman's Fund Ins. Co. v. Vogel*, 195 So.2d 20, 24 (Fla. 2d DCA 1967). The related doctrine of estoppel "requires of a party consistency of conduct, when inconsistency would work a substantial injury to the other party." *Spurrier*, 359 So.2d at 910. The concepts of ratification, waiver, and estoppel all aim to prevent a party from benefitting from its own inconsistent conduct. Simply put, "the law is too well settled to admit of controversy that one may not accept the fruits of a contract and at the same time renounce, or repudiate, the burdens which the contract places on him. *Id.* (quoting *Warren v. Tampa Mortgage Investors' Co.*, 150 So. 738 (Fla. 1933)).

The Florida appellate court in *Spurrier* considered these related concepts in a case that is factually analogous to this one. In *Spurrier*, a bank sued a corporate borrower and two individual guarantors to recover on a loan. 359 So.2d at 909. The guarantors argued the loan was invalid because the people who signed the loan on behalf of the corporate borrower lacked the authority from the company to do so. *Id.* Specifically, the guarantors contended "that the notes were not executed in conformity with the corporate resolution" of the corporate borrower. *Id.* Both the trial and appellate courts rejected the guarantors' argument. The appellate court found "even if the signatures on the notes were not authorized signatures, the trial court could have found that the

unauthorized signatures had been ratified by [the corporate borrower] or that [the corporate borrower] was estopped to deny their authority" because the evidence showed that the corporate borrower "received and retained the proceeds of the notes." *Id.* at 910. In short, the *Spurrier* court refused to let the corporate borrower and guarantors "accept the fruits" of the loan and renounce their obligations to repay it.

This case presents an even easier determination than the one the courts in *Spurrier* faced. ITR, Tannebaum, and Pomerance not only received and retained the benefits of the Purchase Agreement – a $500,000 promissory note – but otherwise acted in complete accordance with the contract. *4th Regdos Dec.*, ¶ 7 & Ex. A. Satori made a $50,000 payment to ITR under the promissory note, and ITR accepted that payment. [Doc. 107-3, ¶¶ 8-9 n.1]. Following the execution of the Purchase Agreement, Tannebaum and Pomerance immediately went to work for Satori and signed the Employment Agreements to that effect. [Doc. 107-4]; *4th Regdos Dec.*, ¶ 8. Satori paid each of them over $375,000 in a little over two years, and both received employment benefits from Satori. [Doc. 107-3, ¶¶ 8-10]; *4th Regdos Dec.*, ¶ 8. Tannebaum and Pomerance have kept Satori's money and benefits and have never offered to return them. [Doc. 107-3, ¶¶ 8-9 n.1]; *4th Regdos Dec.*, ¶ 14. Likewise, Satori has footed the bill on numerous other ITR expenses, including payroll, start-up costs, debt payments, marketing, and web hosting expenses. [Doc. 114-2, ¶¶ 6-7]. ITR accepted all of these "fruits" as it were and has returned nothing. [Doc. 107-3, ¶¶ 8-9 n.1]; *4th Regdos Dec.*, ¶ 14. Just like the borrower and guarantors in *Spurrier*, ITR ratified the Purchase Agreement through its conduct and is estopped from denying its validity. *See* 359 So.2d at 910.

If ITR's conduct had left any doubt as to the validity of the Purchase Agreement, then its execution of the Subordination Agreement removed it. More than a year after signing the Purchase Agreement, ITR signed the Subordination Agreement wherein it acknowledged the $500,000

8

promissory note received under the Purchase Agreement and agreed to subordinate payment of that note as well as "any and all other indebtedness . . . owing by Satori" to the financing Alpine provided under the Credit Agreement. [Doc. 107-5]; [Doc. 114-1, ¶¶ 6-8]. Alpine required and relied on the Subordination Agreement as a condition to the funding it provided under the Credit Agreement. [Doc. 114-1, ¶¶ 6-8]; *4th Regdos Dec.*, ¶ 10. Alpine would not have extended financing to Satori without the Subordination Agreement or if it had any inclination that Satori did not in fact own ITR's assets. [Doc. 114-1, ¶¶ 6-8]; *4th Regdos Dec.*, ¶ 10. At no point prior to this litigation did ITR, Tannebaum, Pomerance, or anyone else, represent to Alpine that the Purchase Agreement was invalid or otherwise ineffective. *4th Regdos Dec.*, ¶ 12. Alpine justifiably relied to its detriment on the validity of the Purchase and Subordination Agreements and it would be unjust based on ITR, Tannebaum, and Pomerance's conduct to allow them to skirt those contracts. *See Spurrier*, 359 So.2d at 910.

        (iii)    <u>ITR's assets did not revert to ITR.</u>

ITR has inconsistently argued in this case that the Purchase Agreement is both invalid and that Section 9.01 of the Purchase Agreement requires the reversion of ITR's assets upon Satori's dissolution. *Compare* [Doc. 59, pg. 2] *with* [Doc. 110, pg. 5]. It is axiomatic that "a party to a contract may not disavow its terms while seeking simultaneously to enforce them." *Travel Express Inv., Inc. v. Hemani*, No. 6:08-cv-01699-Orl-35DAB, 2009 WL 10670424, (M.D. Fla. May 12, 2009) (enforcing contract). Regardless, ITR is plainly wrong.

By its terms, Section 9.01 is neither self-effectuating nor provides any basis for Pomerance and Tannebaum to help themselves to ITR's assets on the way out the door. [Doc. 107-1, § 9.01]. Section 9.01 merely creates an unsecured contractual obligation of Satori to return the ITR assets, which, as an unsecured obligation, is subject to Alpine's blanket lien. *See* FLA. STAT. §§ 679.2011

9

and 679.2031 (security interest enforceable against debtor and third parties when statutory conditions satisfied). Thus, even if ITR did have a reversionary interest under Purchase Agreement, ITR nevertheless agreed to subordinate that interest to Alpine's rights under the Credit Agreement. [Doc. 107-5, § 1.1]. The Subordination Agreement expressly provides for the subordination of any and all debt owing to ITR from Satori, including the contingent reversionary right contained in Section 9.01 of the Purchase Agreement. [Doc. 107-5, § 1.1]. Likewise, ITR subordinated its debt to "all other demands, claims, liabilities or causes of action" Alpine has against Satori. [Doc. 107-5, § 1.1]. Alpine would never have extended financing to Satori otherwise. [Doc. 114-1, ¶¶ 6-8]; *4th Regdos Dec.*, ¶ 10. The reality is that ITR entered into the Subordination Agreement and Pomerance and Tannebaum each voluntarily signed it in order to induce Alpine to lend Satori the capital that it needed to, among other things, continue to fund the operation and development of the ITR assets and the continued employment of Pomerance and Tannebaum. The Subordination Agreement not only demonstrates that ITR honored the sale of its assets to Satori, but also mandates that any contractual right ITR may have to return of the ITR assets be both subordinated to Satori's obligations to Alpine and subject to Alpine's security interest in the ITR assets.

## Conclusion

No one disputes Alpine's right to foreclose its Collateral and obtain a money judgment against the Borrowers for the outstanding debt under the Credit Agreement. And, there is no *genuine* dispute that the assets ITR sold to Satori are included in Alpine's Collateral. Therefore, summary judgment is proper on each of Alpine's claims.

8615116-1

Case 9:17-cv-81164-RLR   Document 154   Entered on FLSD Docket 07/16/2018   Page 11 of 13

WHEREFORE, Alpine respectfully requests the Court enter judgment as follows:

(a) Allowing Alpine to foreclose the Collateral, with the exception of the equity interests in the Borrowers, in accordance with the Credit Agreement and applicable law;

(b) Allowing Alpine to have and recover from Borrowers, jointly and severally, actual damages in the amount of $4,313,859.25, bearing interest at the default rate from the date of judgment until satisfied in full;

(c) Allowing Alpine to have and recover from Borrowers, jointly and severally, Alpine's reasonable and necessary attorney's fees and costs as allowed for by the Credit Agreement, bearing interest at the default rate from the date of judgment until satisfied in full;[3]

(d) Declaring that ITR's assets described in the Purchase Agreement were conveyed to Satori on August 18, 2015;

(e) Declaring that Alpine's lien on Satori's assets includes the ITR assets described in the Purchase Agreement and that such lien is senior to any claim ITR may have to those assets; and

(d) For all other relief to which Alpine may be entitled.

Dated: July 16, 2018

**CONDON TOBIN SLADEK THORNTON PLLC**

By: /s/ *Aaron Z. Tobin*
Aaron Z. Tobin
(*admitted pro hac vice*)
Texas Bar No. 24028045
atobin@ctstlaw.com
8080 Park Lane, Ste. 700
Dallas, Texas 75231
Telephone: 214.691.6300
Fax: 214.691.6311

---

[3] Alpine reserves its right to prove up its reasonable and necessary attorney's fees and costs at any time and in any manner the Court prefers.

11

8615116-1

-and-

Anthony J. Carriuolo
Florida Bar No. 434541
acarriuolo@bergersingerman.com
BERGER SINGERMAN LLP
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
Telephone:  (954) 525-9900

*Attorneys and Trial Counsel for Alpine Capital, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2018, a true copy of the foregoing motion was filed with the Court using the CM/ECF system, which will send notice to the following:

Patrick E. Gonya, Jr.
Florida Bar No. 100020
CAREY RODRIGUEZ MILIAN GONYA, LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: 305-356-5478
pgonya@careyrodriguez.com

*Former Attorneys for Borrower*

John J. Shahady
Florida Bar No. 998990
Tomas R. Shahady
Florida Bar No. 092893
KOPELOWITZ OSTROW FERGUSON WEISELBERG GILBERT
One West Las Olas Boulevard, Suite 500
Ft. Lauderdale, FL 33301
Telephone: (954) 525-4100
jshahady@kolawyers.com
tshahady@kolawyers.com
dambra@kolawyers.com
kirssel@kolawyers.com
*Attorneys for ITR and Nominal Defendants*

8615116-1

John M. Mullin
Florida Bar No. 777323
TRIPP SCOTT, P.A.
110 S.E. 6th Street, 15th Floor
Ft. Lauderdale, FL 33301
Telephone: (954) 525-7500
Facsimile: (954) 761-8475
eService@trippscott.com
jmm@trippscott.com
sxc@trippscott.com
*Attorneys for Former Receiver*

Jeffrey I. Snyder
Yasmin Fernandez-Acuna
Bilzin Sumberg Baena Price & Axelrod LLP
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
Tel: 305-374-7580
Fax: 305-374-7593
jsnyder@bilzin.com
yfernandez-acuna@bilzin.com
*Attorneys for Current Receiver*

                                        */s/ Anthony J. Carriuolo*
                                        Anthony J. Carriuolo

8615116-1